## Drake *versus* Kiely.

1. A lad about ten years of age was forcibly put on board of a freight train by its brakeman, and against his will was carried for a distance of five miles. He returned home on foot, running most of the way, and was taken sick and became permanently crippled in both legs. *Held,* that the action of the brakeman was a trespass, and if the conductor of the train was present, and directed or consented to the acts of the brakeman they were joint trespassers, and if the sickness resulted directly from their acts they were liable in an action of trespass.

2. Per STERRETT, J.—In view of the testimony in this case the court could not undertake to decide that the trespass had no connection with the plaintiff's sickness; that the latter was not the natural and probable consequence of the former. Nor that it was not such a consequence as under the circumstances might and ought to have been foreseen by the defendants as likely to flow from their conduct. These were necessarily questions for the jury.

March 10th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Bradford county:* Of January Term 1877, No. 55.

Trespass on the case by Patrick H. Kiely, by his next friend, John Kiely, against James H. Drake and George Drake, for an injury alleged to have been suffered by the plaintiff by reason of the unlawful acts of the defendants.

James H. Drake, one of the defendants, was the conductor of a freight train, with a caboose car attached for passengers, on the Northern Central Railway, on the 24th of August 1872, at the time of the alleged cause of action, and had acted in that capacity for the period of twenty-two years; the other defendant, George Drake, was a son of J. H. Drake, and acted as brakesman at the time of the alleged cause of action, and was at that time about eighteen years of age. The plaintiff, when injured, was about ten years of age, and resided in his father's family near the depot. The train, on the 24th day of August, arrived at the depot, in Troy, a little after 4 o'clock P. M., and was about two hours late. The conductor immediately went to transact the necessary business into the office of the agent, whose office was located on the west side of the depot building, the railway track being on the east side. The brakesmen were engaged in the transfer of freight at one of the freight cars standing near the north end of the depot platform; the work at the station was completed, with the exception of loading a piano or melodeon. Henry Hebe, one of the employees of the train, went to the caboose, which stood near the water-tank, at the south end of the depot, to get an iron bar, and saw the plaintiff, with two or three of his brothers and some other boys, in the caboose taking peaches from a crate, which they had broken. He immediately stepped back and informed George Drake of the fact. As George came up the plaintiff came from the car, and had stepped on to the depot platform, when George took him in his

[Drake *v.* Kiely.]

arms, carried him into the caboose and put him in the closet on the east side, locked the door, and immediately went back and assisted to load the instrument, which was done in three or four minutes. About the time the work was completed James H. Drake came from the office, and the train immediately started. He alleged he knew nothing of what had happened between his son and the plaintiff, and had no knowledge that the plaintiff was in the car or the closet until the train was in full motion, running at about the rate of fifteen miles an hour on a down grade, and was near the plaster-switch, a distance of between a quarter and a half mile from the depot. It was then concluded, upon consultation of the defendants, in plaintiff's presence, that they would take him on to Columbia × Roads, a distance of some five miles, when he could return with Joseph Williams on the express train coming south, which would bring him back to Troy, his home, in the early part of the evening. He was taken to the Columbia × Roads, got out of the caboose, went home on foot, running or trotting most of the way, as he alleged. He arrived at his home between 5 and 6 o'clock, went to his father's house, and the same evening his mother sent him down town. He was seen coming towards town the same evening, and on the Monday following he was seen around the depot. He was taken sick after his return from the × Roads, and remained, it was alleged, in an unconscious state for a long time. No doctor was called until some ten or eleven days after his return from the × Roads. From this sickness he never recovered. He is a cripple in both legs, and will remain so in all probability for life. He brought suit against defendants for damages alleged to have resulted from the sickness caused by his trip to the × Roads.

At the trial, before Morrow, P. J., defendants proposed to ask the witness, Dr. Axtell, on cross-examination, "If at this first visit Mrs. Kiely stated in the presence of the plaintiff that his (plaintiff's) sickness was caused by his having been in swimming?" Objected to as not a cross-examination. Objection sustained, question rejected. (First assignment of error.)

Also to ask witness, Cornelius Sayles, whether, in conversation, Kiely told him how the boy (plaintiff) got hurt, whether he did not say he got hurt playing weak horse. Objected to, because, first, any conversation had with John Kiely will not affect the plaintiff; and, second, defendants were bound by John Kiely's answers when interrogated in relation to the alleged conversation. Objection sustained. (Second assignment.)

The second and fourth points of the plaintiff, which the court affirmed, were as follows :

2. That if J. H. Drake aided, abetted or directed George Drake in taking the plaintiff on board the car, or if the act of George Drake was in the presence of J. H. Drake, he being the conductor

[Drake *v.* Kiely.]

in charge and control of the train, and George Drake a brakesman under him, then the act was the act of J. H. Drake, and the plaintiff is entitled to recover. (Seventh assignment.)

4. That the plaintiff, being a child of tender years, a different rule of responsibility and contributory negligence prevails from that as to adults, and that what might be a bar to the recovery of consequential damages by an adult might not be a bar in the case of a child of tender years. (8th assignment.)

In the general charge, the court, inter alia, said:

" The undisputed evidence shows that the plaintiff was forcibly put on board the car and carried against his will to Columbia Cross Roads, a distance of nearly five miles; also, that he returned home on foot, running a part if not all the way. George Drake testifies that he put him on the car and locked him in the closet, and kept him there until after the train was under motion. This was an act of trespass on his part, [and if James H. Drake was present, directing or consenting to the act of George in putting him on the car, they were joint trespassers, and the plaintiff is entitled to recover against both] such damages as the jury find, under the evidence, he sustained at their hands. If his sickness was the direct result of their acts, that is, if their acts, in connection with the plaintiff's fright, excitement and exertion in returning home, were the immediate cause of his sickness, [he is entitled to recover damages, as well from the injuries resulting from his sickness as by being put on the car and carried away.]

" But he cannot recover for injuries resulting from his sickness, if his own conduct and acts constituted negligence on his part, which contributed in any degree to such sickness. [What would be negligence in an adult might not be negligence in a boy ten years of age, and hence, the jury in passing on the question of negligence, must have regard to the age and intelligence of the plaintiff at the time the alleged injuries were received.] If his sickness was not the direct result of the acts of the defendants, was the result of other causes, or if his negligence contributed to his sickness in any degree, then he could recover only such damages as he sustained by reason of having been forcibly put on the car and taken away; that is to say, all damages he suffered prior to, and independent of his sickness, and these instructions will govern your verdict, whether under our subsequent instructions you find against George Drake only or against both defendants.

" This leads us to remark, and we call your attention particularly to the fact, that [there can be no recovery in the case against James H. Drake if he had no knowledge of the acts of his son George in putting the plaintiff on the car, knew nothing about the matter until the train had gone from the station a quarter or half a mile,] and was going at the rate of fifteen miles, or thereabouts, an hour.

" He did not make himself a joint tresspasser in refusing to stop

[Drake *v.* Kicly.]

the train and allow the boy to get off, although by this refusal the injury the plaintiff sustained was produced in part by the acts of both defendants, if there was no concert between them. Where two or more commit separate trespasses tending to produce an injury to another, there is no joint liability and can be no joint recovery. This, however, will not prevent a recovery against George Drake under the instructions already given, but there must be no recovery against James H. Drake, unless the jury find from the evidence he was a joint trespasser."

Verdict for plaintiff for $1658, and after judgment, defendant took this writ, and alleged that the court erred as set forth in the above assignments, and in the portion of the charge included in brackets.

*E. B. Parsons* and *Delos Rockwell,* for plaintiffs in error.—The sickness of the lad was too remote a consequence of his being put on the train. The defendants are only liable for such damages as their acts directly caused, and not for the consequences of intervening causes over which they have no control, and which had no connection with putting plaintiff on the car : Hoag *v.* Michigan Southern Railroad Co., 4 Norris 293. See also Pennsylvania Railroad Co. *v.* Kerr, 12 P. F. Smith 353 ; Ryan *v.* New York Central Railroad Co., 35 N. Y. 210 ; Oil Creek Railroad Co. *v.* Keighron, 24 P. F. Smith 320.

The master as such is not liable for the trespasses of his servant, unless the particular wrongful act of the servant was ordered by the master, or in other words, unless the master be the immediate cause of the injury. Even then he is not liable because he is the master, but because the act is personally and immediately his : Yeager *v.* Warren, 7 Casey 219.

*B. S. Bentley* and *Davies & Carnochan,* for defendant in error.

Mr. Justice STERRETT delivered the opinion of the court, May 5th 1879.

The trespass in this case was clearly established by undisputed testimony. The only matters about which there could be any difference of opinion were whether the defendants below were joint trespassers, whether the trespass was the proximate cause of all or only some of the injuries complained of, and, as a sequence thereof, what amount of damage the plaintiff was entitled to recover. There were all questions of fact, exclusively for the jury, and considering the charge as a whole they were submitted with instructions of which the plaintiff in error has no reason to complain. As to the fact of joint trespass, the testimony was such that the court was bound to submit it to the jury. The plaintiff himself testified that George Drake, after forcing him into

[Drake *v.* Kiely.]

the car, locked him up in the closet, and that the other defendant directed George to put him on the car. The witness says: " He caught hold of me and dragged me and put me in the car. His father, James H. Drake, said, put him on. He, George Drake, took hold of me to put me on the car; I took hold of the railing; he pulled me from it; took me in the car; put me in the closet, and left me quite a while, until the train started. I cried and asked him to let me out; they would not let me out; James H. Drake was on the platform when he told George to put me on the car. After the train had started, George came and let me out, and was going to let me off the train. His father told him to keep me on, and he took me up to Columbia × Roads." It is true we find in the defendants' testimony a different version of the transaction, so far as the conduct of James H. Drake at the outset is concerned, but it was the exclusive province of the jury to determine which was correct. If they believed the boy, the defendants were beyond doubt joint trespassers. After speaking of the conduct of George Drake, and pronouncing it an unqualified trespass, the learned judge proceeded to say that " if James H. Drake was present, directing and consenting to the act of George in putting him on the car, they were joint trespassers, and the plaintiff is entitled to recover against both such damages as the jury find, under the evidence, he sustained at their hands." In a subsequent part of the charge, the attention of the jury was again called to this feature of the case, in such a manner that they could not fail to comprehend the principle by which they were to be guided in determining the question of joint liability. They were told there could be no recovery against James H. Drake, " if he had no knowledge of the acts of his son in putting the plaintiff on the car, and knew nothing about the matter until the train had gone from the station a quarter or half a mile. He did not make himself a joint trespasser in refusing to stop the train and allow the boy to get off, although by this refusal the injury the plaintiff sustained was produced in part by the acts of both defendants, if there was no concert between them. Where two or more commit separate trespasses, tending to produce an injury to another, there is no joint liability, and can be no joint recovery. This, however, will not prevent a recovery against George Drake under the instructions already given, but there must be no recovery against James H. Drake unless the jury find from the evidence that he was a joint trespasser." What more could this defendant ask at the hands of the court? Under the instructions thus given, the jury, if they had adopted his version of the transaction, would have been bound to return a verdict in his favor. The result evidently showed that they did not do so. They believed the plaintiff's statement, and we are not at all prepared to say they were not right in so doing. The circumstances disclosed by the testi-

[Drake v. Kiely.]

mony tended rather to corroborate him, and at the same time
render it difficult to understand how such an outrage could occur
while the train was stopping at the station, and the conductor not
be aware of it. If he was present, and cognizant of the trespass
that was being committed, he owed it as a duty to himself and all
concerned to assert his authority and prevent further wrong, and
if he neglected to do so, it would not be unreasonable to infer con-
sent thereto on his part. According to his own testimony, he
certainly manifested great indifference. Referring to the time the
train started from the depot, he says : " I heard an unusual noise
in the baggage-car soon after I got in ; sounded like noise proceed-
ing from a human creature ; I was collecting fare of passengers ;
after I did that, opened the door and went in there." If the
" unusual noise," " proceeding from a human creature," had com-
manded his immediate attention, as it should have done, he could
have released the boy, and set him off the train while he was yet
in sight of home. His conduct was not calculated to elicit the
sympathy of the jury, and if it resulted unduly to his prejudice,
the remedy was solely with the court below. The question of
joint liability was submitted with full and guarded instructions,
of which he has no reason to complain, and the verdict must be
accepted as conclusive. The next question, to which some of the
assignments of error are directed, is that of proximate cause.
Upon an admitted state of facts this would ordinarily be a question
of law for the court : Hoag v. Lake Shore & M. S. Railroad Co.,
4 Norris 293. In the present case the most material facts were in
dispute, and the court could do nothing else than submit the testi-
mony to the jury, with proper instructions to determine the facts,
apply them to the principles of law, and render their verdict
accordingly. It was conceded that the plaintiff had sustained some
injury, for which he was entitled to recover, at least against one
of the defendants, but it was denied that his sickness and subse-
quent suffering, in relation to which considerable testimony was
introduced, was the result of the trespass. In other words, it was
contended that the trespass was not the proximate cause of these
injuries. This was the main question in the case, and in submitting
it to the jury the learned judge instructed them that if the plain-
tiff's sickness was the direct result of the defendants' acts, " that
is, if their acts, in connection with plaintiff's fright, excitement
and exertion, in returning home, were the immediate cause of his
sickness, he is entitled to recover damages as well for the injuries
resulting from his sickness as from being put on the car and carried
away. But he cannot recover for injuries resulting from his sick-
ness if his own conduct constituted negligence on his part, which
contributed in any degree to such sickness. What would be negli-
gence in an adult might not be negligence in a boy ten years of
age, and hence, the jury, in passing on the question of negligence,

12 NORRIS—32

[Drake *v.* Kiely.]

must have regard to the age and intelligence of the plaintiff at the time the alleged injuries were received. If his sickness was not the direct result of the acts of the defendants—was the result of other causes, or if his negligence contributed to his sickness in any degree, then he could recover only such damages as he sustained by reason of having been forcibly put on the car and taken away; that is to say, all damages he suffered prior to and independent of his sickness; and these instructions will govern your verdict whether under our subsequent instructions you find against George Drake only, or against both defendants." The instruction thus given was both appropriate and adequate, and is here referred to at length for the purpose of showing how some of the detached sentences of the charge assigned for error are explained and qualified by the context. If the defendants below had desired other or more specific instructions on the subject, they should have preferred their request to the court. In Hoag *v.* Railroad Co., *supra*, our brother PAXSON says: "The doctrine laid down in the Railroad Co. *v.* Hope, and to be gathered incidentally perhaps from Raydure *v.* Knight, is, that the question of proximate cause is to be decided by the jury upon all the facts in the case; that they are to ascertain the relation of one fact to another, and how far there is a continuation of the causation by which the result is linked to the cause by an unbroken chain of events, each one of which is the natural, foreseen and necessary result of such cause. * * * In determining what is proximate cause, the true rule is, that the injury must be the natural and probable consequence of the negligence; such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act." In view of the testimony in this case, the court could not undertake to decide that the trespass had no connection with the plaintiff's sickness; that the latter was not the natural and probable consequence of the former. Nor that it was not such a consequence as under the circumstances might and ought to have been foreseen by the defendants as likely to flow from their conduct. These were necessarily questions for the jury. A child of tender years was forcibly seized, thrust into a car, locked up in a dark closet, and carried five miles from home, released late in the evening, and left to find his way home as best he could. Was it an unnatural or improbable result, that he should be excited, nervous, terrified; that he should make his way home, if he could find it, with all possible speed, and without thought of consequences? Was it at all unnatural or improbable, that the abuse, excitement and exposure would result in some form of illness, more or less severe? And were not these such natural and probable consequences as might and ought to have been fore-seen by those who committed the trespass? If they were, it was not at all necessary that they might and ought to have foreseen the

[Drake v. Kiely.]

nature, severity or extent of such illness. To hold that this was essential would be requiring entirely too much in the interest of the wrongdoer. The actual results depend very much on the physical condition and constitutional tendencies of the person injured; in some cases they might not be so serious, in others more serious, and even permanent, as in the present case. We fail to see any error, either in the submission of the question to the jury, or in the manner in which it was done. As the case stood upon the testimony, there was no material error in sustaining the objections to questions put to Dr. Axtell and Cornelius Sayles. What has been said refers sufficiently to all the assignments of error that appear to call for special notice. They, as well as those not specially referred to, are not sustained.

Judgment affirmed.

SHARSWOOD, C. J., MERCUR and PAXSON, JJ., dissented.